PEOPLE v GIPSON

Docket No. 287324. Submitted January 5, 2010, at Detroit. Decided January 28, 2010, at 9:05 a.m.

Ted F. Gipson was convicted by a jury in the Macomb Circuit Court, David F. Viviano, J., of first-degree felony murder and armed robbery. Defendant appealed.

The Court of Appeals *held*:

1. The trial court did not abuse its discretion by admitting evidence that, following the charged offenses, defendant obtained a tattoo that read "Murder 1" and depicted a chalk outline of a dead body underneath. The tattoo was relevant to the issues of defendant's intent and culpability in the victim's death and the probative value of the evidence was not substantially outweighed by any danger of unfair prejudice.

2. The trial court did not err by determining that the statements defendant made to the police while in police custody were made voluntarily, knowingly, and intelligently. The trial court did not err by denying defendant's motion to suppress the evidence.

Affirmed.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Eric J. Smith*, Prosecuting Attorney, *Robert Berlin*, Chief Appellate Lawyer, and *Jurij Fedorak*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Gail Rodwan*) for defendant.

Before: DAVIS, P.J., and FORT HOOD and SERVITTO, JJ.

PER CURIAM. Following a jury trial, defendant was convicted of first-degree felony murder, MCL 750.316(1)(b), and armed robbery, MCL 750.529. He was sentenced to concurrent terms of life imprisonment for

the murder conviction and 285 to 480 months' imprisonment for the robbery conviction. He appeals as of right. We affirm.

Defendant's convictions arise from the beating death of defendant's drug supplier, David Witting, during a robbery. Evidence at trial indicated that defendant arranged a meeting with Witting to purchase drugs. During the transaction, defendant's brother, Scott Gipson,[1] emerged from behind a dumpster and struck the victim on the head with a bottle. Defendant and Gipson thereafter punched and kicked the victim, who died from internal bleeding after his spleen ruptured. There is no dispute that defendant was present during the assault, and defendant admitted kicking or punching the victim once or twice, but defendant generally maintained that he did not know that Gipson was going to attack the victim, and defendant claimed that he only struck the victim when he believed the victim was going to hit him.

Defendant argues first that the trial court erred in admitting evidence that, after the charged offenses, he obtained a tattoo that read "Murder 1" and depicted a chalk outline of a dead body underneath. Defendant argues that this evidence was irrelevant and unfairly prejudicial. We review the trial court's decision to admit this evidence for an abuse of discretion, which exists when the trial court's decision falls outside the range of principled outcomes. *People v Blackston*, 481 Mich 451, 460; 751 NW2d 408 (2008). Generally, "the trial court's decision on a close evidentiary question . . . ordinarily cannot be an abuse of discretion." *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000).

---

[1] Because the two brothers share their last name, for convenience we refer to defendant Ted Floyd Gipson as "defendant" and his brother Scott Gipson as "Gipson."

Generally, all relevant evidence is admissible. MRE 402; *People v Yost*, 278 Mich App 341, 355; 749 NW2d 753 (2008). Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence. MRE 401; *Yost, supra* at 355. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403; *Yost, supra* at 407. "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *Blackston, supra* at 462. The determination whether evidence should be excluded pursuant to MRE 403 is best left to the trial court's contemporaneous assessment. *Id.*

Defendant asserts that there are many possible reasons for the tattoo. Indeed, defendant was able to present to the jury a number of plausible theories as to why he obtained the tattoo. Those theories included referring to his dog, which was shot during the police raid on his house; and as a reminder of something he overcame in his life, because he believed he would win the case and not even be charged with the instant offenses. However, there was also evidence that defendant altered the tattoo from an outline of a body to the shape of a dog after being informed that the police wanted to photograph the tattoo. Furthermore, other possible reasons are, as argued by the prosecution, bravado or a symbolic representation of defendant's acknowledged connection to the victim's death. Under the circumstances, the tattoo was relevant to the issues of defendant's intent and culpability in the victim's death. Because the prosecution presented significant other evidence of defendant's guilt without unduly focusing on the tattoo evidence, and because defendant

had the opportunity to present his own explanation of the tattoo, we do not believe that the probative value of the tattoo was substantially outweighed by any danger of unfair prejudice. At the most, it would be a close question of the kind that we could not deem an abuse of discretion.

Defendant next argues that statements that he made while in police custody should have been suppressed because they were not voluntarily made. Defendant argues that the statements were given while he was under the influence of drugs and were coerced by the police.

Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966); *People v Daoud*, 462 Mich 621, 633; 614 NW2d 152 (2000). We review de novo a trial court's determination that a waiver was knowing, intelligent, and voluntary. *People v Tierney*, 266 Mich App 687, 707-708; 703 NW2d 204 (2005). When reviewing a trial court's determination of voluntariness, we examine the entire record and make an independent determination. *People v Shipley*, 256 Mich App 367, 372; 662 NW2d 856 (2003). But we review a trial court's factual findings for clear error and will affirm the trial court's findings unless left with a definite and firm conviction that a mistake was made. *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000). Deference is given to a trial court's assessment of the weight of the evidence and the credibility of the witnesses. *Id.*

"[W]hether a waiver of *Miranda* rights is voluntary depends on the absence of police coercion." *Daoud, supra* at 635. A waiver is voluntary if it was the product

of a free and deliberate choice rather than intimidation, coercion, or deception. *Shipley, supra* at 373-374. The voluntariness of a defendant's statements is determined by examining the totality of the circumstances surrounding the interrogation. *Daoud, supra* at 633-634. A court should consider factors such as: the duration of the defendant's detention and questioning; the age, education, intelligence, and experience of the defendant; whether there was unnecessary delay of the arraignment; the defendant's mental and physical state; whether the defendant was threatened or abused; and any promises of leniency. *Shipley, supra* at 373-374.

Whether a waiver was made knowingly and intelligently requires an inquiry into defendant's level of understanding, irrespective of police conduct. *Daoud, supra* at 636. A defendant does not need to understand the consequences and ramifications of waiving his or her rights. A very basic understanding of those rights is all that is necessary. *Id.* at 642. Intoxication from alcohol or other substances can affect the validity of a waiver, but is not dispositive. *People v Leighty,* 161 Mich App 565, 571; 411 NW2d 778 (1987).

Defendant argued below that his statements were coerced because the police threatened his mother. He testified at the *Walker*[2] hearing that the police told him that his mother, who had been taken into custody, was being detained naked because her clothes were confiscated for evidence. They also allegedly told him that if he spoke, she would be released. Otherwise, she would be charged with being an accessory to murder. Defendant further testified that during the 24 hours before he was taken into custody, he drank four to five 40-ounce beers, ingested approximately 25 Vicodin pills, and smoked 12 marijuana joints. Conversely, the detectives

---

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

denied making the alleged statements regarding defendant's mother. They also testified that based on their experience, defendant did not appear to be under the influence of alcohol or drugs, and they had no trouble communicating with defendant.

Defendant does not dispute that at the time his statements were given, he was in his mid-20s, had a GED, had some limited prior contact with the police, was interviewed within a short time after being taken into custody, and that his interviews, which were about three hours apart, lasted approximately an hour each. Defendant's suppression motion depended on the trial court's resolution of the parties' conflicting accounts of the circumstances surrounding defendant's interrogations, specifically whether the police threatened defendant's mother and whether defendant was under the influence of drugs when he gave his statements. In this regard, the trial court found that Detectives Keith Keitz and Kevin Woods, who both denied making the alleged statements regarding defendant's mother, and who both stated that defendant did not appear to be under the influence of alcohol or drugs, were credible. Further, as the trial court observed, defendant's admitted ability to lie regarding the amount of sleep he had and regarding his initial account of his role in the offense, as well as his ability to change his story to account for inconsistencies between his and Scott Gipson's account while minimizing his own involvement, belied defendant's assertion that he was "in a fog" because of his intoxication. Considering the totality of the circumstances and giving deference to the trial court's assessment of credibility, the trial court did not err by determining that defendant's statements were made voluntarily, knowingly, and intelligently. Thus, the trial court properly denied defendant's motion to suppress.

Affirmed.