# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DAMON DWAINE BOSTICK,

      Defendant-Appellant.

UNPUBLISHED
December 18, 2014

No. 316375
Oakland Circuit Court
LC No. 2011-236420-FC

Before: MURRAY, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.

A jury convicted defendant of first-degree felony murder, MCL 750.316(1)(b), conspiracy to commit armed robbery, MCL 750.157a and MCL 750.529, and armed robbery, MCL 750.529. The trial court sentenced defendant as an habitual offender, fourth offense, MCL 769.12, to life imprisonment for the murder conviction, and concurrent prison terms of 40 to 60 years each for the conspiracy and armed robbery convictions. Defendant appeals as of right. Because the law of the case doctrine controls resolution of defendant's challenge to his bindover and the trial court did not err in admitting defendant's custodial statements at trial, we affirm.

Defendant's convictions arise from the death of Demetrius Lanier during an armed robbery on January 26, 2010, in Southfield. The prosecution's principal witness, Richard Shannon, had rented two apartments in the North Park Towers, one for his residence and one for his business ventures. On January 26, he spoke with defendant and arranged to sell him a quantity of marijuana. While Shannon and Lanier were both in Shannon's apartment on the sixth floor, defendant arrived, accompanied by codefendant Curtis Bragg and a third unidentified man. After Shannon displayed the marijuana for inspection, defendant and his associates gestured as if they were pulling out the purchase money, but instead pulled out handguns. Defendant demanded the location of the "rest" of Shannon's marijuana, and Lanier indicated that it was in an upstairs apartment. Defendant and the unidentified man bound Shannon with duct tape while Bragg stood guard over Lanier. Upon leaving the apartment, defendant cautioned Lanier that if the marijuana was not there, he would call Bragg and instruct him to shoot Lanier. When Bragg's telephone rang minutes later, Lanier got up, and he and Bragg wrestled onto the sixth-floor balcony, from which Lanier ultimately fell to his death. Bragg and the unidentified man left the apartment and fled the scene with defendant.

## I. THE FELONY-MURDER CHARGE

-1-

Defendant initially invites this Court to revisit its decision in a prior appeal, in which this Court reversed a district court's decision refusing to bind defendant over for trial on the felony murder charge. See *People v Bostick*, unpublished opinion per curiam of the Court of Appeals, issued August 2, 2012 (Docket Nos. 308627 & 308628), lv den 493 Mich 896 (2012). However, we are bound to follow this Court's prior decision under the law of the case doctrine. Under that doctrine, an appellate court's determination of a legal issue will not be differently decided in a subsequent appeal in the same case if the facts remain materially the same and there has been no intervening change in the law. *Duncan v Michigan*, 300 Mich App 176, 188-189; 832 NW2d 761 (2013); *People v Hermiz*, 235 Mich App 248, 254; 597 NW2d 218 (1999). This Court's prior decision constitutes the law of the case with regard to defendant's claim that the evidence did not support a bindover on the felony-murder charge, and there has been no change in the facts or law to justify departure from this Court's previous decision. Defendant has not shown that justice would not be served by application of the doctrine in this instance.[1] See *People v Herrera (On Remand)*, 204 Mich App 333, 340; 514 NW2d 543 (1994). Indeed, given that the prosecution presented sufficient evidence to convict defendant at trial, any potential error regarding defendant's bindover has been rendered harmless. *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010). Defendant is not entitled to relief on this basis.

## II. ADMISSIBILITY OF DEFENDANT'S STATEMENT

Defendant next argues that the trial court erred by admitting his custodial police statements at trial. In particular, defendant maintains that statements he made to police on February 3, 2010 were inadmissible because, during an interview with police the night before, he invoked his right to remain silent and, according to defendant, police were thereafter prohibited from initiating further conversation with defendant.

Although defendant challenged the admissibility of his police statements in the trial court and the trial court decided that issue at a *Walker*[2] hearing, defendant did not argue below that his statements should be suppressed because he had invoked his right to silence on February 2, 2010 and the police improperly resumed questioning him on February 3, 2010 in violation of *Edwards v Arizona*, 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981). An objection on one ground is insufficient to preserve an appellate challenge based on a different ground. *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003). Therefore, this issue is unpreserved and we review defendant's claim for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999).

"Both the state and federal constitutions guarantee that no person shall be compelled to be a witness against himself or herself." *People v Cortez (On Remand)*, 299 Mich App 679, 691; 832 NW2d 1 (2013). To safeguard the privilege against self-incrimination, in the context of

---

[1] Defendant acknowledges that the law of the case doctrine precludes this Court from revisiting this issue, but indicates that he is raising the issue to preserve it for further review by a higher court.

[2] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

custodial interrogation, police must advise a defendant of the now-familiar *Miranda* warnings. *People v White*, 493 Mich 187, 194; 828 NW2d 329 (2013), citing *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). "Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his Fifth Amendment rights." *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010), citing *Miranda*, 384 US at 444.

If an individual invokes his right to remain silent, or his right to counsel, the interrogation must cease. *Miranda*, 384 US at 474-476. More specifically, once a defendant invokes his right to counsel, the police must terminate their interrogation immediately and may not resume questioning unless the defendant initiates further communication with the police. *Edwards*, 451 US at 484. When a defendant asserts his right to remain silent, the police must "scrupulously" honor that assertion, and may not persist in repeated efforts to wear down a defendant's resistance. *Michigan v Mosley*, 423 US 96, 104-106; 96 S Ct 321; 46 L Ed 2d 313 (1975); *People v Henry (After Remand)*, 305 Mich App 127, 145; 854 NW2d 114 (2014). Failure to honor a defendant's invocation of his Fifth Amendment rights in this manner may render the defendant's statements inadmissible. See *Edwards*, 451 US at 485; *Henry (After Remand)*, 305 Mich App at 148. However, to be effective, the defendant's invocation of his right to remain silent or his right to counsel must be unambiguous and unequivocal. *Berghuis v Thompkins*, 560 US 370, 381; 130 S Ct 2250; 176 L Ed 2d 1098 (2010); *Davis v United States*, 512 US 452, 459; 114 S Ct 2350; 129 L Ed 2d 362 (1994).

In this case, the record indicates that on February 2, 2010, defendant arrived at the police station at about 7:00 p.m. in the company of his attorney. Defendant's counsel informed police that defendant would not make a statement and that he was not willing to undergo a polygraph examination. Defendant was arrested, and his attorney left the police station. Shortly thereafter, while riding in an elevator with two police officers, defendant voluntarily stated that he did in fact want to speak with police and that he had something to discuss with them that he had not wanted to say in front of his attorney.[3] At that time, police placed defendant in the police station's "Breathalyzer room," and, after being informed of his *Miranda* rights, defendant waived those rights and agreed to speak with police. A conversation lasting approximately 15 to 20 minutes ensued, during which defendant claimed he was working as an informant for the DEA and had not wanted to discuss the matter in front of his attorney. Defendant readily concedes on appeal that he initiated discussion with the police in the elevator on February 2, 2010 and that, given the subsequent waiver of his rights, police could question defendant at that time.

Defendant maintains, however, that after a short while, he stopped the interrogation with police. Specifically, in response to a question about whether he would like to continue the conversation in an interview room, he told police that "I'm going to have to sleep on that and I'll let you know whether I wish to continue speaking." At that time, police stopped the interview

---

[3] At the *Walker* hearing, the trial court made the factual finding that defendant initiated this communication with police.

-3-

and, at about 9:00 p.m., defendant was placed in a holding cell for the night. Police told him that if he wanted to continue speaking, he could reach out to someone within the jail, or someone would speak with him the next day to see if he wanted to continue talking. Police had no further contact with defendant that day. The following day, February 3, 2010, police made contact with defendant, and defendant again indicated that he wanted to speak about the incident. Defendant was again verbally advised of his *Miranda* rights, which he waived, and he signed a constitutional rights form indicating that he wanted to speak with police. At that time, defendant was interviewed by police and he made incriminating statements. It is this interview he now claims could not be admitted as evidence at trial because, according to defendant, it was obtained after he had invoked his right to remain silent during the conversation on February 2, 2010 and he had not reinitiated contact with police.

Defendant's argument is without merit for two reasons. First, after defendant chose to speak to the police on February 2, he did not invoke his right to remain silent with respect to further discussing the case the next morning. At most, on February 2, defendant conveyed to police that he was unsure whether he wished to continue the conversation and that he would like to "sleep on it" before deciding whether to continue the conversation. This statement was not an unequivocal and unambiguous indication that defendant wished to remain silent. On the contrary, his statement clearly manifests uncertainty in regard to whether he wished to continue speaking and he plainly left open the possibility of future conversation with police. This type of equivocal remark does not serve as an unambiguous invocation of defendant's right to remain silent. See *Berghuis*, 560 US at 381.

Second, even if defendant's remark could be construed as an invocation of his right to remain silent, the record indicates that police scrupulously honored this right as required by *Mosley*, 423 US at 104-106.[4] When defendant indicated that he wished to "sleep on it," police immediately ceased the interrogation. Thereafter, the police did not make repeated efforts to wear down defendant's resistance or resume the conversation. See *id.* at 105-106. Instead, defendant was transported to a holding cell at approximately 9:00 p.m. on February 2. Consistent with defendant's wish to "sleep on it," police waited until the next day, after the passage of a significant period of time, to again approach defendant. Cf. *id.* (approving delay of two hours between invocation of right to remain silent and subsequent questioning by police). He was then again given a full and complete set of *Miranda* warnings which he freely waived. Cf. *id.* These facts plainly demonstrate that, to the extent defendant's request to "sleep on it"

---

[4] We note that defendant is mistaken in his assertion that, under *Edwards*, 451 US at 484, only defendant could initiate discussion on February 3, 2010 and that the police were prohibited from doing so. *Edwards* dealt with the unequivocal invocation of the right to counsel, following which only a suspect may initiate further communication with police. In this case, after defendant initiated contact with police in the elevator there is no indication that defendant invoked his right to counsel, meaning that *Edwards* does not apply to the facts of this case. Instead, assuming arguendo that defendant invoked his right to remain silent, the relevant inquiry is whether the police "scrupulously honored" his right to "cut off questioning." See *Mosley*, 423 US at 104; *Henry (After Remand)*, 305 Mich App at 148.

may be construed as an invocation of the right to remain silent, the police scrupulously honored that right. Consequently, defendant has not shown error in the admission of his custodial statement.[5]

Affirmed.

/s/ Christopher M. Murray
/s/ Henry William Saad
/s/ Joel P. Hoekstra

---

[5] This same analysis also supports rejection of defendant's request for a remand to continue the *Walker* hearing. Development of an additional factual record is not necessary to determine the admissibility of defendant's statements. Consequently, remand is not warranted.