# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

DAMIEN CORTEZ CARLISLE,

      Defendant-Appellee.

UNPUBLISHED
September 21, 2017

No. 336125
Ingham Circuit Court
LC No. 16-000444-FH

Before: SERVITTO, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Plaintiff appeals by leave granted[1] from an order of the circuit court granting defendant's motion to suppress statements made by him while undergoing a custodial interrogation by a sheriff's deputy who was wearing a ski mask. The court concluded "that the use of a ski mask to hide the identity and face of an interviewing officer is coercive such that the Defendant's statements were not voluntary and should be suppressed." For the reasons set forth in this opinion, we affirm in part and reverse and remand in part.

## I. BACKGROUND

After a series of controlled buys of heroin, officers from the Tri County Metro Narcotics Team obtained a search warrant for defendant's home. Defendant's girlfriend, Latrea Milton, and a minor child were present at the time of the search. Officers found 4.5 grams of heroin and a cutting agent in the kitchen, a quantity of marijuana in the living room, a .357 revolver and 12 gauge shotgun in the bedroom, and various items showing defendant and Milton resided at the address.

Defendant was arrested at his workplace, and taken to the police station where he was questioned by Deputy Michael Torok. Torok wore a mask during the interview to conceal his identity as a narcotics officer. Torok informed defendant of his *Miranda*[2] rights and defendant

---

[1] *People v Carlisle*, unpublished order of the Court of Appeals, entered March 10, 2017 (Docket No. 336125).

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

agreed to waive those rights and talk to the deputy. Defendant stated that the drugs were his, it was for personal use and, and that he snorted the drugs. He admitted that the guns belonged to him. After being informed of the police surveillance, defendant admitted that he sold drugs to 3 or 4 customers, and that he wanted to keep his girlfriend out of it.

Defendant moved to suppress the confession, and the circuit court held hearings. Torok testified that he was employed by the Ingham County Sheriff's Department and assigned to the Tri-County Metro Narcotics team and that he was involved in an investigation concerning defendant, and assisted in the search of defendant's home and in interviewing defendant. The State Police fugitive team arrested defendant at his place of employment, and took him to the Ingham County Jail where Torok met with him. Torok was wearing a hoodie with a flat brim baseball cap, and had a mask covering most of his face. He testified that he wore the mask to protect the ongoing investigation.

When questioned by the trial court, Torok could not explain why he was chosen to conduct the interview with defendant when he was required to wear a mask. The trial court stated that it was not happy that a police officer wearing a mask did the interview. The trial court questioned why the command officer wasn't identified so that he could explain why a masked interviewer was needed. The prosecutor failed to produce a command officer to address that question.

On the second day of the hearing, Torok indicated that he told defendant that he would have to waive his rights before he could talk with him, and that he informed defendant that he was a part of a narcotics unit which was why he had on the mask. Torok also testified that he did not bring up defendant's girlfriend in the interview in order to get defendant to waive his *Miranda* rights.

At the conclusion of the hearing, the court found that except for the mask everything the officer did was legally sound, therefore requiring the parties to submit memos on the propriety of the use of the mask. Then, in a September 27, 2016 order, the circuit court granted defendant's motion to suppress, finding that under the totality of the circumstances, the questioning of defendant while wearing a ski mask was unduly coercive, rendering defendant's statements involuntary. This Court then granted leave to appeal.

## II. ANALYSIS

On appeal, plaintiff argues that the trial court abused its discretion in finding that defendant's confession was involuntary. Plaintiff contends that the video of the interview clearly reveals that defendant was not coerced and there is an absence of testimony from defendant that he felt he was coerced. Therefore, plaintiff argues, the trial court's ruling should be reversed.

Defendant responds that the trial court properly considered the totality of the circumstances, and focused on the fact that the deputy was masked and threatened defendant's pregnant girlfriend in determining that the statement was involuntary. There is no case law supporting plaintiff's argument that the use of a masked interrogator is not coercive. Where the prosecution failed to call defendant to testify, defendant asserts that plaintiff cannot argue that the absent testimony did not show coercion.

"In considering a motion to suppress evidence, this Court reviews a trial court's factual findings to determine if they are clearly erroneous and reviews a trial court's conclusions of law de novo." *People v Snider*, 239 Mich App 393, 406; 608 NW2d 502 (2000). A factual finding is clearly erroneous when, "although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). The trial court's ultimate decision on a motion to suppress is reviewed de novo. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009).

The parties take different approaches to the issue on appeal. Plaintiff focusses on whether the statements made by defendant were voluntary; defendant analyzes the issue under *Miranda*. In his motion to suppress and supporting brief, as well as a supplemental brief requested by the trial court, defendant framed the issue both in terms of whether the *Miranda* waiver was voluntary and whether the statements made both before and after the *Miranda* waiver were voluntary. In its opinion and order, the trial court did not specifically consider the issue with respect to defendant's *Miranda* waiver.

Given that the challenged statements were made during a custodial interrogation,[3] whether defendant's *Miranda* waiver was rendered involuntary will be considered along with the question of whether the confession itself was voluntary. *People v Gibson*, 287 Mich App 261, 264; 787 NW2d 126 (2010) ("Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights."). The factors to consider when conducting both analyses overlap to a great degree.

Both the United States Constitution and the Michigan Constitution provide that a criminal defendant cannot be compelled to be a witness against himself or herself. US Const, Am V; Const 1963, art 1, § 17. "[T]he United States Supreme Court has held since *Miranda* that in the context of a 'custodial interrogation,' advising a defendant of his *Miranda* rights is necessary to protect his constitutional privilege against self-incrimination." *People v White*, 493 Mich 187, 193-194; 828 NW2d 329 (2013) (citation footnotes omitted). The issue here is whether defendant's waiver of his *Miranda* rights was voluntary.

> "[W]hether a waiver of Miranda rights is voluntary depends on the absence of police coercion." A waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. The voluntariness of a defendant's statements is determined by examining the totality of the circumstances surrounding the interrogation. A court should consider factors such as: the duration of the defendant's detention and questioning; the age, education, intelligence, and experience of the defendant; whether there was unnecessary delay of the arraignment; the defendant's mental and physical state; whether the defendant was threatened or abused; and any promises of leniency. [*Gipson*, 287 Mich App at 264-265, quoting *People v Daoud*, 462 Mich 621, 635; 614 NW2d 152 (2000) (citations omitted).]

---

[3] The parties do not dispute that defendant was in custody at the time of his interrogation.

"Any statement given freely and voluntarily without any compelling influences is . . . admissible in evidence." *Miranda v Arizona*, 384 US 436, 478; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

When considering the voluntariness of a statement after *Miranda* warnings have been given, the following factors should be considered:

> the age of the accused, his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.
>
> The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness. The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made. . . . [*People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988) (citations omitted).]

The ultimate test of admissibility is whether the totality of the circumstances surrounding the confession indicates that it was freely and voluntarily made. *Id.*

Michigan published caselaw is silent on the issue of masked interrogators. The parties point to three cases from other jurisdictions, *United States v Doe*, 149 F3d 634 (CA 7, 1998), *Rodriguez v Texas*, 248 SW3d 764 (2008), and *United States v Hemphill*, 2010 WL 3366137 (Docket No. 1:10-CR-053) (SD Ohio, issued August 20, 2010), none of which required suppression of the defendants' statements.[4]

Defendant argues that the officer's wearing of a ski mask was "deceitful, coercive, and intimidating," however, defendant cannot point to anything in the record that could lead the trial

---

[4] See *Doe*, 149 F3d at 639 (explaining that despite concerns, "We . . . agree with the district court that transporting [the defendant] to the park and leaving him handcuffed in the squad car during questioning does not in itself render [the defendant's] *Miranda* waiver involuntary"); *Rodriguez*, 248 SW3d at 768 (record supported finding that the defendant freely and voluntary gave written statement to police officer, though officer may have been wearing a mask when he took the defendant's statement and was carrying a gun); *Hemphill*, 2010 WL 3366137 at *7-*8 (concluding that despite the fact that the defendant was questioned while handcuffed, in the presence of some officers wearing ski masks, and without having been advised of his *Miranda* rights, which together "suggests a somewhat coercive environment," the totality of the circumstances did not "indicate a level of objectively coercive behavior such as would render [defendant's] statements involuntary").

court to conclude that the officer's appearance was so coercive that defendant's desire not to waive his rights was overborn. The officer's eyes and the bridge of his nose are visible. His clothing is unremarkable, and he is wearing a Detroit Tigers baseball cap. Defendant and the detective seemingly engaged in a free-flow conversation. Defendant never gave any indication either directly or by his actions that he felt threatened or coerced because the detective was wearing a mask. This conclusion is illustrated by noting that the custodial interrogation of defendant begins with general niceties and the officer introducing himself as "Mike." Right away the officer explains, "Obviously with the mask you can probably tell . . . I work for the drug team in Lansing, okay?" The officer then asked a series of questions eliciting general personal and financial information before turning to the issue of *Miranda*. The officer then recited the *Miranda* warnings and responded to defendant's question, "what's going on right now?" by explaining that he needed to talk to defendant about some things the police found in his home. The officer then told defendant he needed to know if defendant was going to waive his *Miranda* rights, and defendant replied, "Yeah I can talk to you."

Defendant was 32 years old and there was no indication that his education or intelligence undermined his ability to voluntarily waive his *Miranda* rights. Further, defendant was not detained for a significant amount of time before the interrogation, nor was the questioning prolonged—the interview lasted only 33 minutes. There is also no evidence of an improper delay in taking him before a magistrate. Likewise, there is no evidence that defendant was injured, intoxicated, drugged, or in ill health, or that he was deprived of food, sleep, or medical attention at the time he waived his *Miranda* rights or thereafter.

Accordingly, the totality of the circumstances demonstrates that defendant's waiver of his *Miranda* rights was voluntary. The ski mask by itself did not result in having the officer appear before defendant as an object of menace such that defendant's ability to consider whether he wanted to talk to the officer was overborne. The officer immediately explained to defendant why he was wearing the mask, forestalling possible speculation by defendant of the meaning attendant to the mask, and the subsequent character of the interrogation did nothing to dispel the validity of this explanation.

Seemingly the trial court was troubled by the assertions made by the state during argument that the wearing of masks during custodial interrogations has become commonplace. However, other than the prosecutor's assertion, there was no direct evidence that this particular task force employs the wearing of a mask as a means to elicit confessions, or more importantly to coerce confessions. Also, defendant did not pursue this issue; hence the question of whether this task force employs masked interrogators as a method to elicit confessions was left open. However based on this record alone, we cannot reach such a conclusion. There is nothing in the record from which we can establish that the task force or this detective in particular engaged in a routine of masked interrogations as a means to coerce confessions. Accordingly, we caution that the legal conclusions reached in our opinion are specific to this case and this particular set of facts.

In lieu of questioning whether Torok was employing a masked interrogator as a means to coerce defendant into confessing, defendant made repeated references to his "pregnant girlfriend," arguing that Torok's such comments about defendant's girlfriend were themselves coercive. However, the record does not show that those references carried with them any threat

that defendant's girlfriend would somehow be ill-treated if defendant did not waive his *Miranda* rights. Indeed, the only reference to defendant's girlfriend prior to defendant's waiver was Torok's question as to whether the heroin found belonged to defendant or his girlfriend.

Defendant's girlfriend is mentioned several times later, but never in the context of any overt or implied threat that she would be mistreated if defendant did not confess. For example, when he denied selling or giving the heroin "to anybody," the officer asked, "Is [she] involved in selling to anybody?" to which he responded, "No." When he was later asked, "[A]nything else in the house—that you're not supposed to have . . . that belongs to you or are you going to put that on [her]?" he admitted that the two guns found (a shotgun and a .357 handgun) were his. The officer may have appealed to defendant's desire to protect his girlfriend, but in the absence of any threats to her welfare, this appeal alone is not a tactic that would undermine defendant's ability to make a free and deliberate choice to waive his Fifth Amendment rights and speak to the officer about the circumstances surrounding the charged offenses. Accordingly, we concur with the trial court and find that this line of statements from the detective does not support a finding that the statements made by defendant were the result of coercion.

During oral argument on this matter, plaintiff conceded that any statements made by defendant prior to the reading and waiver of his rights under *Miranda* were inadmissible. We agree. We therefore affirm the trial court's suppression of defendant's statements prior to his waiver of *Miranda*. We reverse the trial court's complete suppression of defendant's statements for the reasons stated above and remand to the trial court for additional proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Christopher M. Murray
/s/ Stephen L. Borrello