# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v

LAWRENCE LEE COLLEY,

　　　　　Defendant-Appellant.

UNPUBLISHED
January 9, 2018

No. 334262
Wayne Circuit Court
LC No. 16-000129-01-FC

Before: CAMERON, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of two counts of first-degree criminal sexual conduct, MCL 750.520b(1), two counts of third-degree criminal sexual conduct, MCL 750.520d(1)(b), and kidnapping, MCL 750.349, for sexually assaulting his home healthcare nurse. Defendant argues that the trial court improperly denied his motion to suppress his statements during a video-recorded interrogation and subsequently erred by allowing the prosecution to play the video for the jury. Despite defendant's disability, he was competent to waive his rights and speak to the police. We affirm.

## I. BACKGROUND

The victim was a nurse's aide at an out-patient rehabilitation company. Defendant was her client and required care because he had suffered a traumatic brain injury (TBI). On the day in question, defendant became intoxicated on alcohol and possibly marijuana before holding the victim captive in his home and forcibly sexually assaulting her. The victim was finally able to escape when defendant went outside to smoke a cigarette. She immediately summoned help and went to the hospital for a sexual assault examination. DNA evidence linked defendant to the offense. Defendant was arrested sometime after 9:50 p.m. that day.

Not long before noon the following day, Redford Township police Detective Daniel Bailey interrogated defendant in a recorded interview. Bailey read defendant his *Miranda*[1] rights at the beginning of the meeting. Defendant acknowledged that he understood those rights,

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

waived them, and signed an advice of rights form. Defendant's statements during his interrogation essentially boiled down to the following: defendant's encounter with the victim was consensual, he did not threaten her, he did not rape her, the victim never said no, and the victim seemed to be an active participant.

Defendant later moved to suppress any statements from the recorded interrogation, arguing that his waiver was not knowing, intelligent, and voluntary. Defendant claimed that he was incompetent to waive his rights because of his TBI, he required psychotropic medication, and he was likely intoxicated at the time of the interrogation. The court ordered defendant's evaluation at the Michigan Department of Health and Human Services Center for Forensic Psychiatry. Psychologist M. Judith Block conducted the evaluation. Dr. Block rated defendant in the borderline to low average intelligence range. She noted no "gross memory impairment" and found him to be a logical thinker. Defendant was able to give a simple but accurate explanation of each *Miranda* right and to explain why police conduct suspect interviews. Ultimately, Dr. Block concluded that defendant was competent to waive his *Miranda* rights.

The trial court held a hearing but denied defendant's motion to suppress:

> All right. I've had an opportunity . . . to review the report from the Center for Forensic Psychiatry as well as the DVD. And the test here is whether the defendant was aware of the nature of the rights he had abandoned and the consequences of the decision to abandon them. And the People have to show by a preponderance of the evidence that the [waiver of *Miranda*] was knowingly, voluntarily, and intelligent and also is based on a totality of circumstances analysis.
>
> In this particular case the defendant stated that he did not have any kind of a medical emergency, he . . . denied being on alcohol or drugs, although that flipped back and forth, but he understood his rights and he signed them. And as I reviewed the tape he seemed to be – there was a free flow of conversation between the two of them[,] there didn't seem to be any confusion or noncommunication going on between the two parties. That, taken in context with this extensive report from Dr. Block, . . . and again employing the [totality] of the circumstances test, . . . I'm going to deny the Motion to Suppress the Statement.

The prosecutor then played the video-recorded interrogation for the jury at trial.

## II. ANALYSIS

A defendant's Fifth Amendment protections under *Miranda* have been oft-described in Michigan courts. As stated in *People v Tanner*, 496 Mich 199, 209; 853 NW2d 653 (2013):

> [W]hen a suspect has been afforded *Miranda* warnings and affirmatively waives his *Miranda* rights, subsequent incriminating statements may be used against him. . . . A suspect's waiver of his *Miranda* rights must be made "voluntarily, knowingly, and intelligently". . . . The United States Supreme Court has articulated a two-part inquiry to determine whether a waiver is valid:

> First, the relinquishment of the right must have been "voluntary," in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. [Quoting *Moran v Burbine*, 475 US 412, 421; 106 S Ct 1135; 89 L Ed 2d 410 (1986).]

We review de novo a trial court's determination that a defendant's waiver of his Fifth Amendment rights was voluntary, knowing, and intelligent. *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010). We review the court's underlying factual findings for clear error. *Tanner*, 496 Mich at 206. "Deference is given to a trial court's assessment of the weight of the evidence and the credibility of the witnesses." *Gipson*, 287 Mich App at 264.

The Court has described in detail the element of voluntariness:

> Whether a waiver of *Miranda* rights is voluntary depends on the absence of police coercion. A waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. The voluntariness of a defendant's statements is determined by examining the totality of the circumstances surrounding the interrogation. A court should consider factors such as: the duration of the defendant's detention and questioning; the age, education, intelligence, and experience of the defendant; . . . the defendant's mental and physical state; whether the defendant was threatened or abused; and any promises of leniency. [*Id.* at 264-265 (quotation marks and citations omitted).]

The *Gipson* Court also outlined the test for determining whether a statement was knowing and intelligent:

> Whether a waiver was made knowingly and intelligently requires an inquiry into defendant's level of understanding, irrespective of police conduct. A defendant does not need to understand the consequences and ramifications of waiving his or her rights. A very basic understanding of those rights is all that is necessary. Intoxication from alcohol or other substances can affect the validity of a waiver, but is not dispositive. [*Id.* at 265 (citations omitted).]

Sufficient evidence must be presented that the defendant "understood that he did not have to speak, that he had the right to the presence of counsel, and that the state could use what he said in a later trial against him." *People v Tierney*, 266 Mich App 687, 709; 703 NW2d 204 (2005) (quotation marks and citation omitted).

Defendant argues that the combination of his TBI, prescribed psychotropic medicine, and intoxication from alcohol and marijuana rendered him incapable of rendering a knowing and intelligent waiver of his Fifth Amendment rights. Defendant's medical records and the report

prepared by Dr. Block disprove his first two contentions. Although defendant's IQ falls within a borderline range, he was able to describe the meaning and purpose of each *Miranda* warning to Dr. Block. At his interrogation, defendant indicated that he understood his rights and read and signed an advice of rights form. Defendant exhibited more than the "very basic understanding of [his *Miranda*] rights" necessary for his waiver to be considered knowing and intelligent.

Moreover, although defendant has been prescribed psychotropic medication, there is no indication that he was in an altered state at the time of his interview. Defendant's medical records indicated that he did not suffer from psychosis or delusions. And defendant portrays himself as alert and aware of his situation in the recorded interview.

There also was no indication that defendant was still under the influence of alcohol or marijuana during the interrogation. Indeed, defendant denied using marijuana. The interrogation was conducted more than 12 hours after defendant's arrest, an ample period for defendant to sober up. After reviewing the recording we observed no sign of lingering intoxication. Accordingly, defendant has not overcome the evidence that his *Miranda* waiver was knowing and intelligent.

The trial court also did not err in determining that defendant's waiver was voluntary. Neither defendant's detention nor his interrogation was so long as be coercive. Defendant had been in custody for approximately 13 hours and he likely slept through the majority of that period. The interrogation itself lasted only 55 minutes.

Defendant was 20 years old when he was arrested and had no experience with the criminal justice system. As noted, defendant had suffered a TBI and had a below-average IQ. However, defendant indicated during the interview that he understood the rights he was waiving and knew that he had been arrested for sexually assaulting his home healthcare nurse. The video reveals that defendant had no difficulty communicating with the interrogating officer despite his disabilities. Indeed, the officer was unable to confuse defendant into admitting guilt through basic interrogation techniques. Further, as soon as defendant indicated that he had a TBI, the detective delved into the level of defendant's disability to ensure that defendant was competent. Detective Bailey only continued the interrogation after defendant acknowledged that he could read and write and did not suffer memory deficits.

And the interrogation techniques employed by the officer were not overly coercive or abusive. Detective Bailey told defendant things would go easier for him if he told the truth, indicated that the investigation showed defendant raped the victim, suggested defendant take a polygraph, and occasionally talked in vulgar terms about defendant's desire to have sex with the victim. Despite these techniques, defendant adamantly denied his guilt. Moreover, this conduct

all occurred *after* defendant waived his *Miranda* rights and therefore did not influence defendant's decision. On this record, we discern no error in the trial court's admission of defendant's video-recorded statement against him.

We affirm.

/s/ Thomas C. Cameron
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher