*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

JULIAN GUADELUPE REVILLA,

   Defendant-Appellant.

UNPUBLISHED
February 11, 2026
10:11 AM

No. 371629
Eaton Circuit Court
LC No. 2019-020344-FC

Before: GADOLA, C.J., and BOONSTRA and PATEL, JJ.

PER CURIAM.

Defendant, Julian Revilla, was convicted by a jury of first-degree murder, MCL 750.316, felony firearm, MCL 750.227b, being a felon in possession of a firearm, MCL 750.224f, and carrying a concealed weapon, MCL 750.227. Defendant confessed to shooting and killing the victim, Suzann Fedewa, on the side of a road. The trial court denied defendant's motion to suppress his confession for an alleged violation of his Fifth Amendment rights. We affirm.

## I. BACKGROUND

Defendant was arrested in Ohio for charges unrelated to this case. Police interviewed defendant three times about his involvement in this case while he was incarcerated in Ohio. Defendant waived his *Miranda*[1] rights during all three interviews. In the first interview, defendant admitted that he was with the victim the night she was murdered. During the second interview, defendant admitted that he had been there when the victim was killed, but claimed that someone else was the shooter. During the third interview, which went on for almost five hours, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Agent Richard Buyse and Eaton County Sheriff's Office Detective Richard Buxton were preparing to administer a polygraph test to verify defendant's previous statements. Defendant read and signed a *Miranda* waiver.

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

After defendant signed the waiver, Agent Buyse told defendant that he could change his story during the polygraph interview because "they can't use that to hurt you." Defendant then answered Agent Buyse's questions until Agent Buyse asked about an alleged home invasion. At that point defendant stated the following:

> I'm cool with answerin' everything with ya'll, you know what I mean, because we came a long way; but like at this point I don't really, you know what I mean, I'd rather have a lawyer, you know what I'm sayin', because I don't know really what's goin' on right now. I know I'm—I know when it comes to Suzy, I'm tryin', you know what I'm sayin', to give ya'll everything I can so ya'll, so everything can get built on that way. Fuck with a lawyer or not, you know what I'm sayin'. But like all this other shit, I don't know.

Agent Buyse responded that he could not continue the interview if defendant wanted an attorney, and defendant said that he would simply return to his jail cell if he did not want to answer any more questions. They talked about taking a break so defendant could use the bathroom and eat. Then, Detective Buxton asked, "So you're good with continuin' to talk with us?" And defendant replied, "Yeah." Detective Buxton said, "We have to clear that up and make sure that you're willing to." Defendant again replied, "Yeah."

The questioning then continued for several more hours and defendant eventually confessed. Defendant said that a methamphetamine dealer told him to kill the victim and that he shot her. Defendant moved to suppress his confession and the trial court denied defendant's motion. The trial court considered the totality of the circumstances surrounding defendant's confession and found that defendant's confession was voluntarily made.

Defendant's confession was admitted into evidence at the trial, as well as a letter that he wrote to the victim's family, and phone calls that defendant made to his parents from jail in which defendant admitted to shooting the victim. Defendant was convicted by a jury on all counts and sentenced to life in prison without possibility of parole. Defendant now appeals.

## II. ANALYSIS

Defendant argues that the trial court erred in denying his motion to suppress because police continued to question defendant even after he unequivocally requested an attorney, and because defendant's confession was not knowing, intelligent, and voluntary. We disagree.

"Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights." *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010), citing *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966); US Const, Ams V and XIV. "We review de novo a trial court's determination that a waiver was knowing, intelligent, and voluntary." *Gipson*, 287 Mich App at 264. "[W]e review the entire record de novo to determine whether the trial court properly admitted a confession." *People v Kimble*, 252 Mich App 269, 272; 651 NW2d 798 (2002). "Findings of fact made after a suppression hearing are reviewed for clear error, while the ultimate decision on a motion to suppress is reviewed de novo." *People v Vaughn*, 344 Mich App

539, 549; 1 NW3d 414 (2022). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *Id*. (quotation marks and citation omitted).

Criminal defendants have "a constitutional right to counsel during interrogation," and "[w]hen a defendant invokes his right to counsel, the police must terminate their interrogation immediately and may not resume questioning until such counsel arrives." *People v Tierney*, 266 Mich App 687, 710-711; 703 NW2d 204 (2005). Invocation of the right to counsel must be unequivocal, and if a defendant makes "a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," police need not end the questioning. *Id*. at 711 (quotation marks and citation omitted, emphasis added). "[A] limited invocation of the right to counsel does not preclude the admissibility of statements made by a defendant that fall outside that limited invocation" as long as the suspect is "questioned in a manner that does not intrude on that partial request for counsel." *People v Adams*, 245 Mich App 226, 231; 627 NW2d 623 (2001).

In this case, Agent Buyse began to ask defendant about a home invasion that defendant may have been involved in on a different occasion, and defendant said that he would "rather have a lawyer." Defendant's statement, when taken out of context, sounds like an unequivocal request for counsel. *Tierney*, 266 Mich App at 711. However, defendant then said "when it comes to [the victim]," he was willing to "give [the police] everything [he could] . . . with a lawyer or not . . . but all this other shit, [he didn't] know." Based on the context, defendant was referring to the home invasion that he was being questioned about. Thus, defendant's statement indicated that he was willing to continue talking to Agent Buyse about the murder, but was unwilling to continue talking about the home invasion without an attorney.

When Agent Buyse said they would have to stop talking if defendant wanted a lawyer, defendant said "[i]t's not that I—I mean, cause obviously I'm still here talkin' to you . . . [i]f I wanted to get up, I'd be like, I'm . . . walk me back to my cell, you know what I mean." The parties then took a break, and when the break was over Agent Buyse did not question defendant about the home invasion. Thus, defendant's limited invocation of his right to counsel was honored by Agent Buyse, and defendant's right to counsel was not violated. *Adams*, 245 Mich App at 231.

Next, defendant argues that the trial court erred by holding that his confession was voluntary, knowing, and given intelligently. Statements of an accused made during custodial interrogation are inadmissible unless they are voluntarily, knowingly, and intelligently made. See *Gipson*, 287 Mich App at 264. The test of voluntariness is "whether, considering the totality of all the surrounding circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity for self-determination critically impaired[.]" *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988) (quotation marks and citation omitted).

> In determining whether a statement is voluntary, the trial court should consider, among other things, the following factors: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary

delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Id*. at 334.]

Another factor to consider in determining whether a defendant's confession was voluntary is whether promises of leniency were made to the defendant. *People v Givans*, 227 Mich App 113, 120; 575 NW2d 84 (1997). "Whether a waiver was made knowingly and intelligently requires an inquiry into [the defendant's] level of understanding, irrespective of police conduct. A defendant does not need to understand the consequences and ramifications of waiving his or her rights. A very basic understanding of those rights is all that is necessary." *Gipson*, 287 Mich App at 265.

The trial court considered that defendant was 26 years old at the time of his confession, he claimed a lack of education but also claimed to have fully understood his rights when they were explained to him, and he had extensive prior dealings with police, including two police interviews less than a month before the interview in which he confessed. The interrogation was five hours long with breaks in the questioning (so not excessively long), defendant waived his constitutional rights before confessing, and there was no evidence or allegation from defendant that he was injured, intoxicated, drugged, abused, or threatened during the questioning.

The trial court also found that Agent Buyse's promise of leniency did not render defendant's confession involuntary because Agent Buyse was referring to statements defendant might make in a polygraph exam that would be inconsistent with his statements in the prior interviews. The promise of leniency did not relate to defendant's eventual confession to the murder. Further, defendant continued to claim that he was not the shooter for several hours after Agent Buyse made the "promise" in question, which indicates that the promise did not induce defendant to confess.

Defendant testified at the motion hearing that he understood he had the right to an attorney and that he did not have to keep talking to the police, indicating that defendant's statements were voluntary. *Id*. at 265. Thus, the trial court did not err when it found that, under the totality of the circumstances, defendant's confession was knowingly, voluntarily, and intelligently made, and it did not err when it denied defendant's motion to suppress his confession. *Cipriano*, 431 Mich at 333-334.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Sima G. Patel

-4-