*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 21, 2022

Plaintiff-Appellee,

v

No. 349738
Wayne Circuit Court

DEONTEZ LAMAR REESE,

LC No. 18-008812-01-FC

Defendant-Appellant.

Before: LETICA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of first-degree premeditated murder, felon in possession of a firearm (felon-in-possession), carrying a concealed weapon (CCW), carrying a weapon with unlawful intent, and three counts of possession of a firearm during the commission of a felony (felony-firearm), second offense. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arose after defendant shot and killed Maurice Campbell during the early evening hours of June 21, 2018, in Detroit, Michigan. On that evening, Campbell was parked in the parking lot of an apartment complex with his girlfriend, Lakeisha Hill. While it was still light outside, Hill witnessed defendant approaching the car in an aggressive manner. Hill, who had never seen defendant before, asked Campbell if he knew who was walking toward them. Campbell responded by identifying the man as "Tez." Defendant first approached Hill's passenger-side window before walking around the car to speak with Campbell. As Campbell and defendant began arguing, defendant also identified himself as "Tez." As the argument escalated, defendant drew a gun he was carrying in the waistband of his pants—concealed under his shirt—and fatally shot Campbell seven times. Hill was able to provide police with a description of the shooter and told them his name was "Tez."

Defendant ran out of the parking lot, down a side street, got in a white Dodge Charger, and drove away. Marshall Winbush, who lived nearby, saw defendant get in the car and drive away. Winbush noted the car was associated with someone who had family in the area, who Winbush

knew as "Ivan." Detective Jelani Dew of the Detroit Police Department found Ivan's profile on Facebook and discovered defendant was "friends" with Ivan. Because defendant fit Winbush's and Hill's physical descriptions of the shooter, the police had Hill participate in a photographic lineup. Hill immediately identified defendant's photograph as the person she saw shoot Campbell.

Before trial, the prosecution sought to admit other-acts evidence related to defendant under MRE 404(b)(1). This evidence centered on a video of a traffic stop of defendant driving a white Charger. The trial court overruled defendant's objection to the evidence on the grounds that it was unfairly prejudicial and admitted the evidence. During trial, the court denied defendant's attempts to introduce evidence that Campbell's brother was murdered before him, and evidence that Ivan had a friend named "All Hail AlmightyTezz" on Facebook. The trial court determined the evidence was irrelevant, and thus, inadmissible.

Defendant was convicted by a jury and was sentenced to life imprisonment without the possibility of parole for his first-degree premeditated murder conviction; three to five years' imprisonment for each of his felon-in-possession, CCW, and carrying a weapon with unlawful intent convictions; and five years' imprisonment for each of his felony-firearm convictions. After trial, defendant moved the trial court either to grant him a new trial or to hold a *Ginther*[1] hearing regarding his claims of ineffective assistance of counsel. The trial court denied the motion, and this appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant contends he was denied the effective assistance of counsel during trial, or, alternatively, that this Court should reverse the trial court's denial of his request for a *Ginther* hearing. We will address each argument in turn.

## A. SUBSTANTIVE CLAIMS

Defendant argues his defense counsel rendered ineffective assistance during his trial because counsel failed to object to hearsay evidence, did not call alibi witnesses for defendant, and failed to object to improper vouching by the prosecution during closing argument. We disagree.

## 1. STANDARD OF REVIEW

"A claim of ineffective assistance of counsel is a mixed question of law and fact." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*. "Where, as here, there has been no evidentiary hearing on the issue below . . . our review is limited to errors apparent on the record." *People v Seals*, 285 Mich App 1, 19-20; 776 NW2d 314 (2009).

## 2. ANALYSIS

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

"Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *People v Schrauben*, 314 Mich App 181, 189-190; 886 NW2d 173 (2016), citing US Const, Am VI; Const 1963, art 1, § 20. "However, effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Schrauben*, 314 Mich App at 190. "[T]o receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that 'counsel's representation fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland*, 466 US at 690. "Next, the defendant must show that trial counsel's deficient performance prejudiced his defense—in other words, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Jackson*, 313 Mich App at 431, quoting *Vaughn*, 491 Mich at 669.

This Court will not find trial counsel to be ineffective where an objection would have been futile; nor will it second-guess matters of trial strategy. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004); *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). Trial counsel has "wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). "The defendant 'bears the burden of demonstrating both deficient performance and prejudice[;] the defendant [also] necessarily bears the burden of establishing the factual predicate for his claim.' " *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015), quoting *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (alteration in *Cooper*).

Defendant first argues defense counsel was ineffective for failing to object to inadmissible hearsay evidence. Under the Michigan Rules of Evidence, " '[h]earsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay evidence is inadmissible unless it falls within one of the exceptions listed in the Michigan Rules of Evidence." *People v Solloway*, 316 Mich App 174, 199; 891 NW2d 255 (2016).

Defendant specifically challenges the testimony made by Hill when she was describing the events leading up to Campbell's death. Hill stated she and Campbell had discussed a man named "Tez" on the night before the shooting and, on the day of the murder, Hill saw defendant approaching Campbell's vehicle in an aggressive manner. Hill asked Campbell if he knew the man approaching the car, to which Campbell apparently responded, "[t]hat's that n***a. That's, that n***a I was telling you about, Tez." Defendant now contends that defense counsel was ineffective for failing to object because the testimony was inadmissible hearsay.

As noted above, hearsay generally is inadmissible, but there are exceptions to the rule. *Solloway*, 316 Mich App at 199, citing MRE 802. "[A] present sense impression is defined under MRE 803(1) as '[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.' " *People v Bowman*,

254 Mich App 142, 145; 656 NW2d 835 (2002). There are three requirements for an out-of-court statement to be admissible as a present sense impression: "(1) the statement must provide an explanation or description of the perceived event, (2) the declarant must have personally perceived the event, and (3) the explanation or description must have been made at a time substantially contemporaneous with the event." *People v Chelmicki*, 305 Mich App 58, 63; 850 NW2d 612 (2014) (quotation marks and citation omitted). "The principle underlying this exclusion is that the substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation." *People v Hendrickson*, 459 Mich 229, 235; 586 NW2d 906 (1998) (quotation marks and citation omitted).

Defense counsel did not render ineffective assistance with respect to these statements because any objection would have been futile, as Campbell's statements fall within the present sense impression exception to hearsay. See *Thomas*, 260 Mich App at 457. All three requirements are met with respect to Hill's testimony about Campbell's statement as he saw defendant walking toward the car.

First, the statement "provide[d] an explanation or description of the perceived event . . . ." *Chelmicki*, 305 Mich App at 63. Hill asked Campbell if he knew who was walking toward the car. Campbell observed the man approaching the car and him to Hill as "Tez." Second, Campbell "personally perceived the event," because he watched as defendant approached the vehicle. *Id.* And third, Campbell's "explanation or description [was] made at a time substantially contemporaneous with the event." *Id.* (quotation marks and citation omitted). According to Hill, Campbell made his statement as soon as she asked him who was approaching the vehicle. Notably, Hill also testified defendant walked quickly toward the vehicle, and only a few seconds passed between when she noticed him and when he arrived. Thus, in those same few seconds, Hill saw defendant walking up, pointed him out, and Campbell provided his identification. The timing essentially was instantaneous and, therefore, occurred contemporaneously with defendant walking up to the car. Accordingly, Hill's testimony was admissible as a present sense impression under MRE 803(1). *Chelmicki*, 305 Mich App at 63.

Even if defense counsel had objected to Hill's testimony, the objection would have been overruled because the evidence was admissible under a hearsay exception, MRE 803(1). Therefore, defendant's argument of ineffective assistance of counsel must fail, because "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Wang*, 505 Mich 239, 253 n 22; 952 NW2d 334 (2020) (quotation marks and citation omitted).

Next, defendant contends that his counsel was ineffective for failing to object to a statement of the prosecutor during rebuttal closing argument in which he claims the prosecutor improperly vouched for Hill. Implicit in defendant's argument is the contention that the prosecutor committed

misconduct during rebuttal argument, which necessitated an objection from defense counsel.[2] To address this claim, we must first consider whether the prosecutor actually engaged in misconduct.

"A prosecutor 'is the representative . . . of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.' " *People v Evans*, 335 Mich App 76, 89; 966 NW2d 402 (2020), quoting *Berger v United States*, 295 US 78, 88; 55 S Ct 629; 79 L Ed 2d 1314 (1935). This Court "evaluate[s] instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's [actions] in context and in light of the defendant's arguments." *People v Lane*, 308 Mich App 38, 62-63; 862 NW2d 446 (2014). "Generally, 'prosecutors are accorded great latitude regarding their arguments and conduct.' " *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (citation omitted). "They are free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case." *Id*. (quotation marks and citation omitted; alteration in original). In making those arguments, "[t]he prosecutor need not speak in the blandest of all possible terms." *People v Blevins*, 314 Mich App 339, 355; 886 NW2d 456 (2016) (quotation marks and citation omitted).

During closing arguments, the prosecutor stated: "There is no way that Ms. Hill has misidentified the Defendant. That is a face she will never forget." Defendant insists this statement improperly vouched for Hill's identification of defendant as the shooter. While it is true that "[a] prosecutor may not vouch for the credibility of a witness by conveying to the jury that he has some special knowledge that the witness is testifying truthfully," *People v Clark*, 330 Mich App 392, 434; 948 NW2d 604 (2019), "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Jackson*, 313 Mich App at 426 (quotation marks and citation omitted). In other words, while a prosecutor is not permitted to vouch for the credibility of their witnesses or to "suggest that the government has some special knowledge that the witness is testifying truthfully," the prosecution "may [] argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief." *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997).

Reviewing the challenged statement by the prosecutor in context, it is clear the statement was not improper vouching. In the simplest terms, the prosecutor's argument was the jury should believe Hill's identification of defendant because it was supported by the facts of the case. Hill knew the man's name was "Tez" from when the shooting occurred. She provided a physical description of the shooter, which matched defendant. And, within 24 hours of the shooting, Hill identified defendant as the shooter in a photographic lineup. Given all of those facts, the prosecutor argued Hill's identification was worthy of belief.

The prosecutor did not purport to have special knowledge of Hill or her veracity in the case. Instead, the argument properly focused on the facts admitted at trial and that the jury should find Hill's testimony credible. Consequently, this argument by the prosecutor did not amount to

---

[2] We employ the phrase "prosecutorial misconduct" as a term of art synonymous with "prosecutorial error," not as an indication that the prosecution engaged in intentional misconduct. *Jackson*, 313 Mich App at 425 n 4.

misconduct. *Clark*, 330 Mich App at 434; *Jackson*, 313 Mich App at 426. As a result, even if defense counsel had objected to the prosecutor's argument, it would have been a futile objection. Therefore, defendant's argument of ineffective assistance of counsel must fail.

Lastly, defendant contends defense counsel was ineffective for failing to call purported alibi witnesses at trial. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Muhammad*, 326 Mich App 40, 66; 931 NW2d 20 (2018) (quotation marks and citation omitted). In other words, this Court "will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 590; 831 NW2d 243 (2013). "As with any other claim of ineffective assistance, [] defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020) (quotation marks and citation omitted).

Defendant claims defense counsel should have called Charie Johnson and Christopher Foaster, whom he identifies as alibi witnesses. During the trial court proceedings, defense counsel filed a notice of an alibi defense, which identified Johnson as a potential alibi witness, but did not reference Foaster. At trial, when asked if he planned to call any witnesses, defense counsel told the trial court he would not be calling any alibi witnesses. On appeal, defendant states the witnesses would have made a difference at trial. However, the record contains no information regarding the proposed testimony of Foaster and, while defendant provided his own affidavit, he only says the alibi witnesses "were willing to testify on [his] behalf." The affidavit does not provide any detail as to the content of such purported testimony. Therefore, there is no evidence to support defendant's argument that the testimony of Foaster would have been beneficial to the defense, and defendant has failed to meet his "burden of establishing the factual predicate of his ineffective assistance claim" with respect to Foaster. See *White*, 331 Mich App at 148 (quotation marks and citation omitted).

While the same cannot be said to be true for Johnson, we nevertheless conclude that counsel was not ineffective for failing to call her as a witness. Johnson was identified as an alibi in defendant's pretrial notice and, when coupled with defendant's pro se affidavit, was sufficient to satisfy defendant's burden to establish a factual predicate. However, the record demonstrates that counsel made a strategic decision not to call Johnson at trial. Defense counsel initially informed the court during jury selection that he might "not call anybody" but stated that "Mr. Reese may testify, [a] fellow named Christopher Head and a young lady named Shanae (phonetic) [sic] Johnson." During trial, however, when the court specifically inquired about the alibi, counsel appeared to retreat from presenting the listed alibi witnesses, stating: "I don't think, I'm going to do anything with it."

After the trial court obtained a copy of the alibi notice, it asked whether all the witnesses listed would be called. Defense counsel responded that he was "not going to call anybody" on the alibi list. Later that same day, defendant declined to testify and defense counsel indicated that he might call witnesses depending on how the court ruled on the emergency motion to add a witness. The next day, defendant rested without calling any witnesses. Thus, the record demonstrates that counsel made a strategic choice not to call the listed alibi witness, "and this Court will not

substitute its judgment for that of counsel regarding matters of trial strategy." See *Muhammad*, 326 Mich 66 (quotation marks and citation omitted).

In sum, defendant has failed to satisfy his burden to establish that his trial counsel provided ineffective assistance of counsel during his trial. The challenged hearsay statement was admissible as a present sense impression and the prosecutor did not improperly vouch for Hill. And defendant has failed to provide any evidence that Foaster could offer relevant testimony or that the decision to forgo Johnson's testimony was not a matter of sound trial strategy. Thus, counsel's performance did not fall below the objective standard of reasonableness, and we affirm defendant's convictions.

## B. *GINTHER* HEARING

Defendant also argues this Court should reverse the trial court's order denying his motion for a *Ginther* hearing. We disagree.

### 1. STANDARD OF REVIEW

A trial court's decision whether to grant an evidentiary hearing, such as a *Ginther* hearing, is reviewed for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. at 217.

### 2. ANALYSIS

The trial court did not abuse its discretion when it denied defendant's motion for a *Ginther* hearing.

Defendant contends he was entitled to a *Ginther* hearing to establish a factual record supporting his claims of ineffective assistance of counsel. In Michigan, a *Ginther* hearing is a method by which "[a] defendant who wishes to advance claims that depend on matters not of record can properly . . . seek at the trial court level an evidentiary hearing for the purpose of establishing his claims . . . ." *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). A *Ginther* hearing is not warranted if the "defendant has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective . . . ." *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

Defendant asserts a *Ginther* hearing should have been held regarding his claims of ineffective assistance of counsel related to Hill's hearsay testimony and the prosecutor's improper vouching. However, as discussed above, Hill's testimony was admissible under the present sense impression exception under MRE 803(1), and the prosecutor did not engage in improper vouching. Defendant has not explained how a *Ginther* hearing would have led to a factual record relevant to those conclusions. Instead, the record is clear that any objection by defense counsel on those grounds would have been overruled, regardless of any additional factual record created at a *Ginther* hearing. Therefore, with respect to defendant's arguments regarding hearsay and improper vouching, "defendant has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective . . . ." *Williams*, 275 Mich App at 200. Consequently, the trial court did not abuse its discretion by refusing to hold a *Ginther* hearing as related to those two issues. *Unger*, 278 Mich App at 216-217; *Williams*, 275 Mich App at 200.

Defendant also argues, however, that a *Ginther* hearing was required to explore why defense counsel did not call Johnson and Foaster as alibi witnesses. Defendant has failed to show a *Ginther* hearing was required. While defendant provided an affidavit related to this issue, as it relates to Foaster, the affidavit was an insufficient attempt to "set forth any additional facts that would require development of a record" in this case. *Williams*, 275 Mich App at 200. As discussed in the previous section above, defendant's affidavit only identified that Johnson and Foaster were alibi witnesses that were available to testify at trial but were not called by defense counsel. Defendant's affidavit does not, however, provide any detail as to the content of the purported testimony that would be provided by the witnesses. Thus, with respect to Foaster, the trial court did not abuse its discretion by denying defendant's motion for a *Ginther* hearing. See *People v Pickens*, 446 Mich 298, 327; 521 NW2d 797 (1994) (concluding claim of ineffective assistance premised on the failure to call a witness must fail if "no evidence has been presented to establish that the alibi witness would have testified favorably at trial").

With respect to Johnson, the only additional connection to an alibi defense was the notice filed by defense counsel during pretrial proceedings, in which Johnson is identified as a potential alibi. While we believe the notice, when paired with defendant's affidavit, was sufficient to provide an offer of proof regarding his claim, the argument still must fail. The record indicates that defense counsel made a strategic decision not to call Johnson as an alibi witness, and we will not second guess such matters of strategy. See *Muhammad*, 326 Mich 66 ("[T]his Court will not substitute its judgment for that of counsel regarding matters of trial strategy.") (quotation marks and citation omitted).

## III. RIGHT TO PRESENT A DEFENSE AND TO A FAIR TRIAL

Next, defendant argues his constitutional rights were violated by the trial court's decision to limit his ability to call witnesses and introduce evidence. Specifically, defendant attempted to admit evidence regarding Ivan's Facebook friend, "All Hail AlmightyTezz," and evidence regarding the murder of Campbell's brother, all of which was denied after objection from the prosecutor. We disagree that defendant's constitutional rights were violated and affirm his convictions.

## A. STANDARD OF REVIEW

We "review[] for an abuse of discretion a circuit court's decision to admit or exclude evidence." *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019) (quotation marks and citations omitted). Generally, we "review de novo constitutional questions and issues of law underlying evidentiary rulings." *Kowalski*, 492 Mich at 119. However, defendant failed to preserve the issue of whether the trial court's decision to not admit evidence regarding the murder of Campbell's brother violated his constitutional rights because he did not argue in the trial court that the exclusion of such evidence would violate his rights. See *Thorpe*, 504 Mich at 252 ("To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal."). "To avoid forfeiture under the plain error rule, three requirements must be met: 1)

error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## B. ANALYSIS

Defendant contends the trial court improperly and unconstitutionally hamstrung his defense by refusing to allow defendant to admit the challenged evidence. Although defendant has framed this issue as implicating a plethora of his constitutional rights, the relatively straight-forward issue is whether the trial court properly limited defendant's introduction of evidence regarding "All Hail AlmightyTezz," and questioning of Hill about Campbell's brother. As to defendant's claim he was denied the right to present a defense, "[t]here is no doubt that based on the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process or Confrontation Clauses, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (quotation marks and citations omitted). This right "includes the right to call witnesses." *People v Zitka*, 335 Mich App 324, 332; 966 NW2d 786 (2020) (quotation marks and citation omitted). However, even with the constitutional right to present a defense, "an accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *King*, 297 Mich App at 474 (quotation marks and citations omitted). "The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* (quotation marks and citations omitted). Stated differently, "the right to present a defense extends only to relevant and admissible evidence." *Zitka*, 335 Mich App at 333 (quotation marks and citation omitted). As to defendant's fair trial argument, " '[a]n important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence . . . .' " *People v Hana*, 447 Mich 325, 350; 524 NW2d 682 (1994), amended 447 Mich 1203 (1994), quoting *Zafiro v United States*, 506 US 534, 540; 113 S Ct 933; 122 L Ed 2d 317 (1993).

The dispute at trial revolved around the relevance of the evidence sought to be introduced by defendant. Under MRE 401, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Michigan Rules of Evidence also provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court." MRE 402. "[A] material fact need not be an element of a crime or cause of action or defense but it must, at least, be 'in issue' in the sense that it is within the range of litigated matters in controversy." *Zitka*, 335 Mich App at 333-334 (quotation marks and citation omitted; alteration in original).

Defendant's theory of relevance focuses on the primary dispute during the trial: the identity of the shooter. One of defendant's theories of the case was that he did not shoot Campbell and was misidentified as the shooter. Defendant contended that as a result of Campbell's alleged participation in the drug trade, he had evidence demonstrating that other people in the neighborhood had a significant motive to see Campbell murdered. The trial court allowed this theory of the case to an extent. Pertinently, defendant introduced evidence that Campbell was involved in the drug trade, was not liked by some people in the neighborhood, and had drugs in

the back of his car. Defendant provided more specific evidence, which the trial court also admitted, of Hill seeing a social media post by another individual who asked, "Who is the King of Beirut now." The implication from the evidence that defendant wanted the jurors to draw was that Anderson had killed Campbell and was now the "King" of the neighborhood. The trial court also permitted the defense to ask Hill about a telephone call she received after the murder from an unknown number in which an unidentified male said he planned to kill Hill and Campbell's brothers.

Despite allowing the above evidence, the trial court determined two pieces of evidence were irrelevant and, thus, inadmissible. First, defendant sought to question Hill if Campbell's brother had been murdered before him. Defendant contends this testimony, when coupled with the telephone call from the unidentified male discussed above, was relevant because it tended to show Campbell's family was targeted for being involved in the drug trade. However, there was no evidence to conclude the telephone call at issue was related to Campbell's alleged involvement in the drug trade. Indeed, there was no evidence Campbell's *family* was involved in drug dealing. Moreover, the telephone call did not bolster defendant's theory of relevance because the call occurred after Campbell's death, yet contained a threat to kill the brother, who apparently had died *before* the call.

While defendant's identity as the shooter was an issue of dispute at trial, defendant was required to show how the brother's murder was probative of the issue of whether defendant shot Campbell. Because his theory of relevance relies on connections between the evidence that simply do not exist, defendant's argument regarding this evidence fails. In short, there was no evidence the brother was involved in drug dealing. Considering the evidence at issue was not relevant to defendant's identity as the shooter, the trial court did not abuse its discretion, let alone plainly err, by ruling it was inadmissible. MRE 401; MRE 402. Further, as this Court has held, "[a] criminal defendant's constitutional right to present a defense [is not] infringed by MRE 402, which simply bars the admission of irrelevant evidence." *Unger*, 278 Mich App at 250. Thus, this argument lacks merit.

Next, defendant challenges the trial court's decision to bar testimony about "All Hail AlmightyTezz." Defendant again argued this evidence was relevant to identity, the primary issue at trial. His theory of relevance regarding identity, however, fails. During trial, Detective Dew testified he identified defendant by searching Facebook. Before that discovery on social media, he had been told by witnesses that the shooter had fled the scene of the crime in a white Charger, which was associated with someone named "Ivan." Detective Dew then found "Ivan," who he claimed was "Ivan Lazar," on Facebook. Detective Dew searched Ivan's Facebook friends for "Tez" and found defendant's profile.

At trial, defendant sought to introduce evidence of Ivan Lazar also being Facebook friends with someone named "All Hail AlmightyTezz." Defendant believed the evidence of this friend was relevant because it showed Detective Dew might have identified the wrong "Tez" when searching Ivan's friend list. However, this theory of relevance assumes defendant was only identified as the shooter because Detective Dew found he was friends with Ivan. Instead, the record demonstrates that in addition to the Facebook discovery, defendant fit the physical description of the shooter provided by Hill and Winbush, and was identified by Hill in a lineup. There was no similar evidence related to "All Hail AlmightyTezz." Further, defendant failed to

establish that the person who owned the profile fit the description of the shooter provided by the eyewitnesses as the record as presented to this Court establishes "All Hail AlmightyTezz" had longer hair, lighter skin, and a thinner build.

Defendant also failed to connect "All Hail AlmightyTezz" to this crime in any other way. Specifically, one of defendant's theories was that Campbell's murder was related to his purported involvement in the drug trade. Defendant did not establish "All Hail AlmightyTezz" was involved in the drug trade in any manner. Further, defendant presented no evidence or claim that "All Hail AlmightyTezz" was somehow associated with Campbell, his family, or Hill, which would have provided at least minimal support "All Hail AlmightyTezz" had some reason to kill Campbell. Additionally, defendant failed to present any evidence that "All Hail AlmightyTezz" was friends with Ivan Lazar at the time the murder was committed, which was the relevant time when Ivan's white Charger was seen fleeing the scene of the shooting.

In sum, the only evidence identified by defendant as connecting "All Hail AlmightyTezz" with Campbell's murder was a friendship with Ivan, who was only tangentially related to this case. While defendant insists evidence about "All Hail AlmightyTezz" is relevant because defendant's witness found the profile the same way Detective Dew found defendant's Facebook profile, the situations are barely similar. Detective Dew did not merely identify defendant's profile and end the investigation there. To the contrary, defendant's association with this case was established by ample other evidence, including fitting the physical description of the shooter, having been found to have recently purchased a white Charger, and a tattoo on his body which showed he actually went by the name "Tez." There was no evidence in quality or quantity as related to "All Hail AlmightyTezz." The reference to the name "Tez" in his profile and being friends with Ivan simply was not enough to show the evidence was probative of "All Hail AlmightyTezz" being somehow involved in Campbell's murder.

Consequently, the trial court did not abuse its discretion by ruling the evidence at issue was irrelevant, MRE 401, and thus, inadmissible, MRE 402. Further, because "[a] criminal defendant's constitutional right to present a defense [is not] infringed by MRE 402, which simply bars the admission of irrelevant evidence," defendant has also failed to prove a constitutional violation occurred. *Unger*, 278 Mich App at 250. Finally, his claim of a violation of his right to a fair trial must suffer the same fate, because " '[a]n important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence . . . .' " *Hana*, 447 Mich at 350, quoting *Zafiro*, 506 US at 540. Therefore, by ensuring irrelevant evidence was not admitted at trial, the court did not violate defendant's right to a fair trial. *Hana*, 447 Mich at 350.

## IV. OTHER-ACTS EVIDENCE

In his last claim on appeal, defendant argues he is entitled to a new trial because of improper admission of a video showing defendant being arrested on an unrelated charge, contending it is improper other-acts evidence. We disagree.

## A. STANDARD OF REVIEW

This Court "reviews for an abuse of discretion a circuit court's decision to admit or exclude evidence." *Kowalski*, 492 Mich at 119. "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *Thorpe*, 504 Mich at 251-252 (quotation marks and citations omitted). This Court "review[s] de novo constitutional questions and issues of law underlying evidentiary rulings." *Kowalski*, 492 Mich at 119.

However, defendant did not preserve this argument for appeal because he did not argue in the trial court that the evidence was inadmissible under MRE 404(b) or excludable under MRE 403. Thus, to prevail, "defendant must show a plain error that affected substantial rights." *Thorpe*, 504 Mich at 252. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763.

## B. ANALYSIS

Defendant contends the evidence of his previous traffic stop, in which he was handcuffed and ticketed, should not have been admitted under MRE 404(b)(1) or should have been excluded under MRE 403. MRE 404(b) regulates the admissibility of evidence of "[o]ther crimes, wrongs, or acts . . . ." Indeed, MRE 404(b)(1) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The Michigan Supreme Court explained that the rule is one " 'of legal relevance' that 'limits only one category of logically relevant evidence': '[i]f the proponent's only theory of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question, the evidence is not admissible.' " *People v Jackson*, 498 Mich 246, 258; 869 NW2d 253 (2015), quoting *People v VanderVliet*, 444 Mich 52, 61-63; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). "Underlying the rule is the fear that a jury will convict the defendant inferentially on the basis of his bad character rather than because he is guilty beyond a reasonable doubt of the crime charged." *People v Watkins*, 491 Mich 450, 468; 818 NW2d 296 (2012). MRE 404(b), however, "is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010). That "nonexhaustive list of reasons" includes "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." MRE 404(b)(1).

Defendant also contends the evidence should have been excluded under MRE 403. Under that rule, even relevant and otherwise admissible evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." MRE 403. Notably, MRE 403 does not regulate evidence that is simply "prejudicial" because "[r]elevant evidence is inherently prejudicial." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995) (citation omitted), mod 450 Mich 1212 (1995). Rather, it is "only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *Id*. "First, this Court must decide whether introduction of [the] evidence at trial was unfairly prejudicial. Then, this Court must apply the balancing test and weigh the probativeness or relevance of the evidence against the unfair

-12-

prejudice." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (quotation marks and citation omitted).

"Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Gipson*, 287 Mich App 261, 263; 787 NW2d 126 (2010), quoting *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). In other words, the "major function [of MRE 403] is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Mills*, 450 Mich at 75 (citation omitted). Such concerns arise where "the tendency of the proposed evidence [is] to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App at 611 (quotation marks and citation omitted). Additional concerns include "the danger of confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Watkins*, 491 Mich at 489 (quotation marks and citation omitted).

The Michigan Supreme Court has reduced the above caselaw into a four-part test to determine whether other-acts evidence was properly admitted at trial:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017), quoting *VanderVliet*, 444 Mich at 55.]

For the first step, during the trial court proceedings, the prosecution argued the other-acts evidence was being offered to prove identity, which is a proper purpose listed under MRE 404(b)(1). *Denson*, 500 Mich at 398. Having identified a proper purpose under MRE 404(b)(1), the next question is whether the other-acts evidence at issue was actually relevant to proving identity. Our Supreme Court has "emphasized the importance of logical relevance, calling it the 'touchstone' of the admissibility of other-acts evidence." *Denson*, 500 Mich at 401. "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Id*. "Materiality is the requirement that the other-acts evidence be related to any fact that is of consequence to the action." *Id*. (quotation marks and citation omitted). "Evidence is probative if it tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Id*. at 401-402, quoting MRE 401. When discussing probative value under MRE 404(b)(1), "the proffered evidence truly must be probative of something other than the defendant's propensity to commit the crime." *Denson*, 500 Mich at 402 (quotation marks, citation, and emphasis omitted).

Defendant's identity as the shooter was material to this case. Indeed, almost all of defendant's strategy of defense focused on portraying him as being misidentified by Hill. Therefore, the prosecution's proposed purpose for the evidence, which was identity, was a "fact that is of consequence to the action." *Id*. at 401 (quotation marks and citation omitted).

-13-

The other-acts evidence also was probative of defendant's identity as the person who shot and killed Campbell. The video and testimony about defendant's traffic stop was probative of identity for two separate and distinct reasons. First, the video showed defendant as he appeared on June 4, 2018, approximately two weeks before the shooting. Importantly, in the video, defendant matched the physical description provided to police by Hill. One of Hill's descriptors was about the shooter's hair, which was in shorter braids, dreadlocks, or "twisties." Winbush said the man running from the scene of the shooting while carrying a gun also wore his hair in that style. In the video of the traffic stop, defendant wore his hair in shorter braids or dreadlocks. At the time of trial, according to the prosecution, defendant had changed the style of his hair. Thus, the traffic stop video was probative of defendant's identity because it showed defendant matched the description of the shooter just 17 days before the shooting. The probative value was increased by defendant's change of hairstyle before trial, which could have affected whether the jury believed Hill's and Winbush's description of someone with braids or dreadlocks.

Second, the other-acts evidence also was probative of defendant's identity because it established that he had just purchased and was driving a white Charger days before the murder. Other than a description of the shooter's physical appearance, Winbush also testified the shooter got into a white Charger parked on a side street and drove away. According to an officer who canvassed the neighborhood, he had interviewed someone who lived in the area, and said he also saw the shooter drive off in a white Charger. Officer Michael El Hage's testimony and the video of the traffic stop showed defendant driving a white Charger. It also contained a statement from defendant that he had just purchased the white Charger.

Because testimony at trial established the shooter drove away from the scene of the crime in a white Charger, evidence establishing defendant had just purchased a white Charger and was driving it 17 days before the murder was probative of defendant's identity as the shooter. *Denson*, 500 Mich at 401-402. Defendant's argument to the contrary focuses on a factual dispute about the type of car fleeing the scene. Specifically, defendant identifies two 911 recordings played at trial, which alternatively identified the car as a white Cadillac or a silver Ford. While defendant has successfully identified a factual dispute, he has not identified a reason the other-acts evidence should not have been admitted during trial. The admissibility of other-acts evidence does not rely on the other act being probative of an undisputed fact established at trial; instead, it must merely be probative of a fact at issue. In this case, the fact at issue was defendant's identity as the shooter. One way the shooter was identified was by fleeing the scene in a car, which two witnesses said was a white Charger. Thus, the fact that defendant had a white Charger and was driving it 17 days before the crime occurred was probative of his identity as the person who shot and killed Campbell. *Id.*; MRE 404(b)(1). Although defendant could argue to the jury the 911 callers properly identified the car, which would undermine the probative value of the other-acts evidence, such argument does not establish the trial court erred, plainly or otherwise, in deciding to admit the evidence. *Denson*, 500 Mich at 401-402; MRE 404(b)(1).

The third prong of the test regarding admissibility of other-acts evidence requires application of MRE 403. *Denson*, 500 Mich at 398. On appeal, defendant contends the evidence should have been excluded under MRE 403 because it was unfairly prejudicial considering it wrongly encouraged the jury to connect him to the car seen fleeing the scene of the shooting. As noted above, however, MRE 403 does not regulate evidence that is simply "prejudicial" because "[r]elevant evidence is inherently prejudicial." *Mills*, 450 Mich at 75 (citation omitted). "Unfair

-14-

prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *Gipson*, 287 Mich App at 263, quoting *Blackston*, 481 Mich at 462. Evidence of defendant driving and claiming to own a white Charger was not unfairly prejudicial. The evidence was specifically related to an issue in the case—whether defendant was the person who shot and killed Campbell. Two witnesses said the shooter drove away from the scene of the murder in a white Charger. Thus, defendant owning and operating a white Charger just days before the murder was not *unfairly* prejudicial, but merely prejudicial because it was relevant to defendant's guilt. *Mills*, 450 Mich at 75; *Gipson*, 287 Mich App at 263. In light of defendant's failure on appeal to identify any unfair prejudice arising out of the other-acts evidence, he has not proven the evidence should have been excluded under MRE 403. *Gipson*, 287 Mich App at 263.[3]

In sum, the other-acts evidence was logically and legally relevant to defendant's identity under MRE 404(b)(1), its probative value was not substantially outweighed by the danger of unfair prejudice under MRE 403, and a possible limiting instruction is not relevant to the analysis. *Denson*, 500 Mich at 398. As a result, the trial court did not err, plainly or otherwise, by allowing the other-acts evidence to be admitted at trial. *Id*.; *Carines*, 460 Mich at 763.

Affirmed.

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan

---

[3] The final prong of this analysis requires this Court to consider whether the trial court was requested to and did provide a limiting instruction to the jury. *Denson*, 500 Mich at 398. Here, neither party raises the issue of a limiting instruction. There is no record evidence supporting such an instruction was requested or given, nor an argument the trial court somehow erred by failing to do so without such a request. Consequently, this last factor is inapplicable in this case. *Id*.