*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 21, 2024

Plaintiff-Appellant,

v

No. 364969
Wayne Circuit Court
LC No. 92-007058-02-FC

ERON SHELLMAN,

Defendant-Appellee.

Before: GADOLA, C.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

In this interlocutory appeal, the prosecution appeals by leave granted[1] the trial court's order granting defendant's amended motion for relief from judgment and request for a new trial. The prosecution argues that the trial court abused its discretion in granting defendant's motion because it failed to address whether the newly discovered evidence is admissible on retrial. We affirm.

## I. FACTS

This case arises from the fatal shooting of Antonio Knight in May 1992. On the night of the shooting, defendant, Andre Rice, Floyd Pennington, and Antonio Knight were driving around in Pennington's car. Rice and Pennington had been drinking so defendant was driving. Knight was in the front passenger seat, Rice was in the back seat behind Knight, and Pennington was in the back seat behind defendant. While defendant was driving, Rice fatally shot Knight in the back of the head. Rice and defendant were arrested and had a joint trial with separate juries. Defendant was convicted of first-degree murder under an aiding and abetting theory, MCL 750.316, and was sentenced to life imprisonment without parole. Defendant appealed his sentence, which this Court affirmed in December 1994. *People v Shellman*, unpublished memorandum opinion of the Court of Appeals, issued December 9, 1994 (Docket No. 162677). Rice was convicted of second-degree

---

[1] See *People v Shellman*, unpublished order of the Court of Appeals, entered July 3, 2023 (Docket No. 364969).

murder and sentenced to 25 to 60 years' imprisonment. Rice was released after serving 23 years in prison and is no longer on parole.

At trial, defendant's cousin Montez Bell testified for the prosecution. Bell's testimony was bifurcated between the two juries. Bell's testimony in front of Rice's jury was limited due to hearsay implications. However, Bell's testimony in front of defendant's jury was more extensive; Bell claimed that defendant had made comments to him on the day of the shooting (though during his testimony to Rice's jury, he could not recall the exact day of the conversation). Bell testified that defendant said he "was going to take [Knight] out." When asked to explain what this statement meant, Bell replied that he understood the statement to mean, "That he was going to kill [Knight]." Bell was also arrested in connection with the shooting but was released after giving a statement. In this statement to police, Bell stated that defendant told him, "[Knight has] got to go."

Because neither defendant nor Rice testified at defendant's trial, Bell was the prosecution's main witness. Felicia Humphrey was set to testify at trial to offer impeachment evidence against Bell, but the court excluded Humphrey as a witness for being present during the trial and violating a sequestration order. Humphrey intended to testify that Bell told her that he did not know anything about Knight's death. Bell died in 2014.

In 2017, defendant filed an *in propria persona* motion for relief from judgment. In June 2021, defendant retained counsel and filed an amended motion. Defendant first argued he was entitled to a new trial based on two pieces of newly discovered evidence: (1) a statement Andre Rice made to police indicating he did not know when he decided to shoot Knight, and (2) an affidavit Andre Rice signed in 2017 stating that neither defendant nor Pennington knew he was going to shoot Knight that day. Further, defendant argued he was entitled to a new trial under MCL 770.1 even if no additional grounds for a new trial exist. Defendant then requested an evidentiary hearing. In October 2021, the trial court entered an order granting defendant's request for an evidentiary hearing stating that "defendant has shown that further factual development is necessary to advance his claims." On February 9, 2022, the trial court held the first of five evidentiary hearings on defendant's motion. Felicia Humphrey and Andre Rice testified as to what their testimony would have been had they testified at defendant's trial.

In May 2022, before the second evidentiary hearing, defendant filed a motion to add a witness and a new issue to his motion for relief from judgment. Defendant asserted that Jennifer Palmer, a previously unknown and unidentified witness, had information directly relevant to defendant's case. Palmer was defendant's girlfriend from 1991 to 1993. While defendant was detained awaiting trial, Palmer claims that Bell told her, "[Rice] shot the guy while [defendant] was driving." Additionally, Palmer claims that Bell told her, "[defendant] had nothing to do with it." Defendant then argued he was entitled to a new trial and requested permission to include a new issue under *Cress*[2] for relief on the basis of the newly discovered evidence of Palmer's testimony. At the evidentiary hearing, the prosecution had no objection to defendant's request to add Palmer as a witness and the new issue to his pending motion.

---

[2] *People v Cress*, 468 Mich 678; 664 NW2d 174 (2003).

At the third evidentiary hearing in August 2022, Palmer testified that she knew defendant in 1991 and that they were in a romantic relationship through 1993. In the summer of 1992 a detective from the Detroit Police Department arrived at Palmer's home and told her that defendant had been arrested. When Palmer spoke to defendant later about the incident, defendant denied having killed anyone.

Sometime after speaking to the police, but before defendant's trial, Palmer spoke with Bell. Bell told Palmer "not to worry, that [defendant] would be home. [Defendant did not] commit the murder, that [Rice] did." Palmer also testified that Bell had said "that [defendant] had nothing to do with it." Palmer did not tell defendant about what Bell had said to her. Palmer also did not know that Bell had testified at defendant's trial because she did not attend the trial. Palmer then confirmed she was never asked to testify in defendant's trial and that she never spoke to defendant's attorney. Palmer first discussed her knowledge of the case when she was contacted by a private investigator in 2022, who happened to have been her guardian as a child.

Additionally, defendant testified on his own behalf. Defendant explained that Knight was one of his best friends from childhood. Defendant did not recall Palmer ever telling him about her conversation with Bell. Defendant explained that on the day of the shooting he was with Rice and Pennington. They stopped at Rice's home where defendant called Knight to ask if he wanted to go with them to get haircuts from a friend who was a barber. Rice was apparently not in the room when defendant made this phone call.

Defendant admitted he had been driving when Rice shot Knight, but he denied knowing that Rice was going to shoot Knight. Defendant stated that Rice and Knight were drinking and cracking jokes in the car while he was driving. Defendant said the last thing he heard Knight say was a joke about Rice's mom. Defendant asserted that he was scared and startled when he heard the gunshot such that he swerved the car. When he swerved and hit the brakes, Knight's body fell into his lap, and defendant held him and tried to stop the bleeding. Rice subsequently removed Knight's body and dragged it into an alley, and defendant drove them away. Defendant explained that he did see Bell a couple times the day of the shooting, but he denied telling him that he was "going to take [Knight] out." Defendant did say "[Knight has] got to go" to Bell, but defendant claims it was taken out of context. Bell had asked defendant what he had going on that night, so defendant replied that he had a date with Palmer, Floyd and Rice were going to drink, and "[Knight has] got to go" meaning that Knight had to go home.

Rice also testified at the first and third evidentiary hearings. Rice did not testify in his own defense at trial. Rice confirmed that he did not know when he decided to shoot Knight. After he was arrested, the police questioned Rice. The police asked if defendant and Pennington knew that Rice was going to shoot Knight, and Rice responded "not that I remember." This statement was read into the record before Rice's jury, but defendant's jury never heard this statement. Rice testified that a third party had told him that Knight had made threats towards him. Rice did not know that they were going to see Knight that day. After Knight got in the car, Rice confirmed that they went to the barber's house to get haircuts. Rice also confirmed that defendant did not know Rice was going to shoot Knight. Finally, Rice stated that he was never asked to testify at defendant's trial, and that he would have testified if he had been asked.

Following the evidentiary hearing, both parties filed supplemental briefs. Relevant to this appeal, defendant argued that under the four-prong *Cress* test he was entitled to a new trial on the basis of Palmer's newly discovered testimony, which "directly impeach[ed] the already weak testimony of the prosecutor's main witness [Bell]." Defendant further argued that even if defendant was not entitled to relief from judgment under MCR 6.500, the trial court could nevertheless grant him a new trial under MCL 770.1. In turn, the prosecution argued that defendant's newly discovered evidence was inadmissible, and therefore cannot form the basis for granting a new trial. Because Bell (as a deceased witness) cannot be afforded the opportunity to explain or deny his statements, Palmer's testimony is inadmissible, and defendant cannot meet his burden under *Cress* to admit the newly discovered evidence.

In its opinion and order, the trial court granted defendant's motion and request for a new trial. The court concluded that defendant established all prongs of the *Cress* test. First, Palmer's testimony was "newly-discovered material evidence that could not have been discovered before trial." Next, Palmer's testimony was not cumulative because defendant's trial counsel did not have a clear and contrary statement from any other witnesses to impeach Bell's testimony. Additionally, Palmer's testimony makes a different result probable on retrial because "it directly impeaches that already weak testimony of the prosecutor's main witness." The court then granted defendant's motion and request for a new trial "pursuant to *People v Cress* and MCL 770.1." The prosecution appeals.

## II. STANDARD OF REVIEW

We "review a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of fact supporting its decision for clear error." *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). Additionally, "[a] trial court's decision whether to admit evidence is reviewed for an abuse of discretion…." *People v Ackerman*, 257 Mich App 434, 442; 669 NW2d 818 (2003). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes or makes an error of law." *Swain*, 288 Mich App at 628-629 (citation omitted).

## III. JURISDICTION AND SCOPE OF APPEAL

As a preliminary matter, defendant first contests this Court's jurisdiction over this appeal. Defendant argues that the admissibility of the newly discovered evidence issue is limited only to whether defendant satisfied the fourth prong of the *Cress* test for a new trial. Defendant argues the prosecution has included a discussion regarding the trial court's error in determining the first three *Cress* prongs that was not raised in its application for leave to appeal. Thus, defendant argues that this Court cannot consider these additional issues because they fall outside of the scope of the order granting leave to appeal. We disagree.

This Court may grant leave to appeal from a nonfinal order of the circuit court or any other order appealable to this Court by law or rule. See MCR 7.203(B). Here, the prosecution filed its application for leave to appeal on February 16, 2023, following the trial court's January 26, 2023 order granting defendant's motion for relief from judgment. Because the prosecution's application for leave to appeal was timely, and this Court granted the application, this Court has jurisdiction to review this case. See MCL 7.205(A)(1).

Next, defendant's argument that this Court cannot consider the issues regarding the first three prongs of *Cress* is unpersuasive. Under MCR 7.205(E)(4), "unless otherwise ordered, the appeal is limited to the issues raised in the application and supporting brief." On July 3, 2023, this Court granted the prosecution's application for leave to appeal limited to "the issues raised in the application and supporting brief." *People v Shellman*, unpublished order of the Court of Appeals, entered July 3, 2023 (Docket No. 364969). In its application for leave to appeal, the prosecution included an argument in its discussion section concerning the *Cress* test for admitting the newly discovered evidence. While the prosecution primarily focused on the fourth prong of *Cress*, it did include an argument that defendant failed to carry his burden under the first three prongs of *Cress* as well. Therefore, because the prosecution argued in its application for leave to appeal that the trial court erred by concluding that defendant established all prongs of *Cress*, we can consider the same issues presented in the prosecution's brief on appeal.

## IV. NEWLY DISCOVERED EVIDENCE UNDER *CRESS*

The prosecution argues that the trial court failed to address the threshold question of whether the newly discovered evidence is admissible on retrial, and thus, the trial court abused its discretion when it granted defendant's motion. Because review of the evidence demonstrates that Palmer's testimony would be admissible on retrial, we disagree that the trial court abused its discretion when it granted defendant's motion.

"Historically, Michigan courts have been reluctant to grant new trials on the basis of newly-discovered evidence." *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012). However, under *Cress*, the court may grant a defendant a new trial based on newly discovered evidence if the defendant meets all elements of a four-prong test. See *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003). "In order for a new trial to be granted on the basis of newly-discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *People v Johnson*, 502 Mich 541, 566; 918 NW2d 676 (2018), quoting *Cress*, 486 Mich at 692. Further, a defendant bears "the burden of making the requisite showing regarding each of the four parts of the *Cress* test." *People v Rao*, 491 Mich 271, 274; 815 NW2d 105 (2012).

Regarding the first and third *Cress* prongs, whether evidence is considered newly discovered depends on whether a defendant knew of the evidence at the time of the trial. See *Rao*, 491 Mich at 281. Here, defendant testified that he could not recall Palmer ever mentioning her conversation with Bell to him. Additionally, Palmer testified that she did not tell defendant or his counsel about her conversation with Bell before or during the trial. Palmer also did not attend defendant's trial, did not know of Bell's testimony at trial, and did not know she had evidence that could potentially be useful for defendant. We agree with the trial court that defendant could not have discovered Palmer's testimony earlier as he had no reason to know that Palmer possessed information potentially beneficial to his case. Thus, we conclude defendant established the first and third prongs of the *Cress* test for the newly discovered evidence.

Regarding the second *Cress* prong, Palmer's testimony would not be cumulative. At trial, defendant attempted to impeach Bell but did not have a clear or contrary statement from another

witness. Trial counsel attempted to secure impeachment evidence from Felicia Humphrey, but because Humphrey had been present for part of the trial the court excluded her as a witness. Humphrey had been prepared to testify that she spoke to Bell before defendant's trial and that Bell told her he was going to testify even though he did not know anything about Knight's death. Thus, because the court excluded Humphrey's testimony, Palmer's testimony regarding Bell's credibility would not be cumulative.

As to the fourth *Cress* prong, Palmer's testimony makes a different result probable on retrial. When assessing a claim of newly discovered evidence, a trial court must consider all of the evidence that would be presented on retrial. *People v Rogers*, 335 Mich App 172, 201; 966 NW2d 181 (2020). Here, the trial court concluded that the newly discovered evidence of Palmer's testimony would have made a different result probable on retrial. However, the trial court did not determine whether Palmer's testimony would be admissible in the first place. Thus, the trial court abused its discretion when it failed to address the threshold issue of whether Palmer's testimony would have been admissible on retrial to impeach Bell's prior testimony.

Nevertheless, we conclude that Palmer's testimony would be admissible on retrial and thus the trial court's error was harmless. While hearsay is generally not admissible, Palmer's testimony is not being offered to prove the truth of the matter asserted. See MRE 801(c). Instead, Palmer's testimony is being offered to attack Bell's credibility, i.e., as impeachment evidence. See MRE 613(b). "The purpose of extrinsic impeachment evidence is to prove that a witness made a prior inconsistent statement—not to prove the contents of the statement." *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995). Thus, Palmer's testimony could come in under MRE 806, which provides:

> When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.[3]

Because Bell is deceased and no longer available as a witness, his trial testimony would be read into the record under the hearsay exception for former testimony. See MRE 804(a)(4). Palmer's testimony may then be used as evidence to attack Bell's credibility because the credibility of the declarant may be attacked "by any evidence which would be admissible for those purposes if declarant had testified as a witness." MRE 806. MRE 613(b) allows impeachment with extrinsic evidence of a prior inconsistent statement. Although MRE 613(b) generally requires that the declarant "is afforded an opportunity to explain or deny" the inconsistent statement, MRE 806

---

[3] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. We rely on the version of MRE 806 in effect at the time this matter was decided.

explicitly states that "[e]vidence of a statement . . . by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain." Therefore, Palmer's testimony may properly be admitted under MRE 806 to attack the credibility of Bell. Thus, defendant met his burden of demonstrating that the newly discovered evidence of Palmer's testimony would be admissible on retrial.

On retrial, the jury would hear Palmer's impeachment evidence against Bell regarding his credibility and prior inconsistent statements. We conclude a reasonable juror could find Palmer a credible witness and believe her testimony over Bell's testimony. Further, "[d]eference is given to a trial court's assessment of the weight of the evidence and credibility of witnesses." *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010). Here, the trial court found that Palmer's testimony was "exceptionally credible" and that she had "no reason to be untruthful." Thus, we conclude it was within the trial court's discretion to grant defendant a new trial on the basis of Palmer's testimony and its potential effect on the outcome of a retrial.

## V. NEW TRIAL UNDER MCL 770.1

The prosecution argues that the trial court abused its discretion when it granted defendant a new trial under MCL 770.1. We agree. However, because the trial court properly granted defendant a new trial under *Cress*, the error is harmless.

Under MCL 770.1, a trial court "may grant a new trial to the defendant, for any cause for which by law a new trial may be granted, or when it appears to the court that justice has not been done, and on the terms or conditions as the court directs." However, subchapter 6.500 of the Michigan Court Rules "is the *exclusive* means to challenge a conviction in Michigan once a defendant has exhausted the normal appellate process." *People v Watroba*, 193 Mich App 124, 126; 483 NW2d 441 (1992) (emphasis added). Additionally, MCR 6.501 states that, "[u]nless otherwise specified by these rules, a judgment of conviction and sentence entered by the circuit court not subject to appellate review under subchapters 7.200 or 7.300 may be reviewed only in accordance with the provisions of this subchapter." Further, the Michigan Supreme Court has "superseded MCL 770.1 with the adoption of MCR 6.431." *Rogers*, 335 Mich App at 192. Under MCR 6.431(B), a trial court may grant a new trial "on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." Thus, "a trial court cannot use MCL 770.1 to accomplish indirectly what it could not accomplish directly." *Rogers*, 335 Mich App at 192.

In this case, the trial court granted defendant relief and a new trial "pursuant to *People v Cress* and MCL 770.1." The trial court was silent on its reasoning and did not explain how relief was appropriate under MCL 770.1. The court's order simply defined MCL 770.1 and stated, "defendant is entitled to a new trial pursuant to MCL 770.1." Because MCR 6.500 is the exclusive means to challenge defendant's conviction, MCL 770.1 cannot be used as the basis for a new trial once a defendant has exhausted the normal appellate process. See *Watroba*, 193 Mich App at 126. We conclude the trial court abused its discretion when it granted defendant's request for a new trial under MCL 770.1.

However, as discussed above, we conclude the trial court's grant of a new trial was appropriate under *Cress*. Therefore, even though the trial court erroneously included MCL 770.1 as a basis for granting a new trial, relief and a new trial were still appropriate under *Cress*. See *Cress*, 468 Mich at 692; see also *Johnson*, 502 Mich at 566. Therefore, the inclusion of MCL 770.1 as a basis for relief was harmless.

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray